IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST C. PARSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 12-1338-SLR |
| | ) |
| DAVID PIERCE, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

Ernest C. Parson. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

October 29, 2015
Wilmington, Delaware

---

[1] Warden David Pierce has been substituted for former Warden Perry Phelps, an original party to this case. See Fed. R. Civ. P. 25(d).

[signature] ROBINSON, District Judge

## I. INTRODUCTION

Currently before the court is Ernest Parson's ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("application"). (D.I. 1) For the reasons that follow, the court will dismiss petitioner's § 2254 application as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II. BACKGROUND

As set forth by the Delaware Supreme Court in petitioner's direct appeal, the facts leading to petitioner's arrest and conviction are as follows:

> [Petitioner], after serving part of a prior sentence at Gander Hill prison, was transferred to the Plummer Work Release Center in Wilmington (the "Center") on September 18, 1986. On the morning of October 17, 1986, [petitioner] was released from the Center to go to his place of employment. When [petitioner] failed to return, a warrant for his arrest was issued on a charge of escape after conviction.
>
> On November 3, 1986, two black males, one of whom was later identified as [petitioner], entered a Cumberland Farms Store in Wilmington and waited until all of the other customers left. They then approached the counter to make a small purchase and when the cashier opened the register, the taller of the two men pulled out a gun and demanded money. A witness described the gun as being a sawed-off, twelve gauge, double-barrelled shot gun with black tape wrapped around the stock. The perpetrators took all of the money in the register.
>
> On November 9, 1986, a lone black male fitting [petitioner's] description entered a Dairy Queen in Wilmington, displayed a gun and demanded money. The gun was described as being black, double-barrelled and having black tape wrapped around the stock.
>
> On November 12, 1986, Samuel and Esther Sklut, the owners of the Penn Rose Deli in Wilmington, were beaten to death in the course of a robbery. One witness testified that she had seen [petitioner] in the store shortly before the time of the murders. Several other witnesses testified that they saw [petitioner] leaving the store shortly after the time of the killings.

*Parson v. State*, 571 A.2d 787 (Table), 1990 WL 17767, at *1 (Del. Feb. 5, 1990)

In September 1987, a Delaware Superior Court jury convicted petitioner of two counts of intentional murder, two counts of felony murder, three counts of first degree robbery, second degree conspiracy, and escape after conviction. (D.I. 10 at 1); See Parson, 1990 WL 17767, at *1. Petitioner was sentenced to life imprisonment as follows: two natural life sentences for his first degree intentional murder convictions; two natural life sentences for his first degree felony murder convictions; three thirty-year sentences for his first degree robbery convictions; thirty years for his escape conviction; and seven years for his second degree conspiracy conviction. (D.I. 10 at 1) Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences. See Parson, 1990 WL 17767, at *5.

In 2008, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging that his two felony murder convictions should be vacated because there was insufficient evidence that the two victims were murdered "in furtherance of" the robbery as required by the Delaware Supreme Court's "reinterpretation" of the felony murder statute in Williams v. State, 818 A.2d 906 (Del. 2002), and made retroactively applicable to cases on collateral review in Chao v. State, 931 A.2d 1000 (Del. 2007) ("Chao II"). See Parson v. State, 38 A.3d 1255 (Table), 2012 WL 892525, at *2 (Del. Mar. 14, 2012). The Superior Court summarily dismissed the Rule 61 motion after determining that Williams did not apply to petitioner's case, explaining that the evidence "presented at trial showed that" petitioner "murdered [the victims] in furtherance of committing the felony of robbery." State v.

*Parson*, ID No. 86014749, Letter Order (Del. Super. Aug. 12, 2008). Petitioner did not appeal that decision.

In June 2011, petitioner filed a second Rule 61 motion, contending that: (1) he deserved relief under *Williams*; (2) he was denied his right under Del. Code § 3507 to confront State witnesses against him; and (3) the State violated his right to confrontation by refusing to permit material impeaching of a witness' "intoxicated" statement. (D.I. 12, State's Motion to Affirm in *Parson v. State*, No. 556,2011 at B-61, B-71, B-72) The Superior Court dismissed the motion as procedurally barred by Rule 61(i)(1),(2), and (4). *Id.* at B-62 to B-64, B-74. Petitioner appealed, arguing that his convictions must be vacated pursuant to *Williams, Chao II, State v. Owens*, 2010 WL 2892701 (Del. Super. July 16, 2010) and *State v. Bridgers*, 970 A.2d 257 (Table), 2009 WL 824536 (Del. Mar. 30, 2009). The Delaware Supreme Court affirmed the Superior Court's judgment, holding that petitioner's second Rule 61 motion was procedurally barred as untimely under Rule 61(i)(1) and repetitive under Rule 61(i)(2), and the *Williams* claim was also barred as formerly adjudicated under Rule 61(i)(4). *See Parson*, 2012 WL 892515, at *1. The Delaware Supreme Court also concluded that petitioner's related argument that there was insufficient evidence to convict him of robbery under *Bridgers* did not provide him with a means to avoid the procedural bars under Rule 61(i)(5). *Id.*

Thereafter, petitioner filed in this court a § 2254 application asserting one ground for relief, namely, that there was insufficient evidence to convict him of the two felony murders and the underlying robbery under *Williams, Chao II, Owens*, and *Bridgers*. (D.I. 1; D.I. 2 at 2) He appears to assert the following two-pronged insufficient evidence

argument: (1) the State failed to establish the predicate felony of first degree robbery because there was insufficient evidence that petitioner committed "theft" of the two deceased store owners as required by Owens and Bridgers; and (2) there was insufficient evidence that the two victims were murdered "in furtherance of" the robbery as required by Williams and Chao II. The State filed an answer, asserting that the application should be denied in its entirety as time-barred or, alternatively, because the claim is procedurally barred. (D.I. 10)

## III. ONE-YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and it prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. See Holland v. Florida, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling).

Petitioner's application, which is dated October 2012, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C). He does, however, appear to contend that he is entitled to a later limitations starting date of June 20, 2007 under § 2244(d)(1)(D) because *Chao II* provides the "factual predicate" for his habeas claim by making the *Williams* holding retroactively applicable. This argument is unavailing. *Chao II* and *Williams* cannot establish a factual predicate for petitioner's sole claim, because they were not decisions rendered in his own litigation history and they did not directly eliminate his legal status as a convict. *See Johnson v. United States*, 544 U.S. 295 (2005)(holding that a notice of order vacating a federal prisoner's prior state conviction used to enhance federal sentence triggers AEDPA's one year limitations period, provided petitioner has shown due diligence in seeking the order); *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005)(explaining that a state court decision clarifying or re-defining state law does not trigger § 2244(d)(1)(D) unless the petitioner was party to that case.). To the extent petitioner also contends that the limitations period should start on the date *Owens* (July 16, 2010) or *Bridgers* (March 30, 2009) was decided, the court rejects the argument for the same reason. Thus, the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety

Petitioner's application, which is dated October 2012, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C). He does, however, appear to contend that he is entitled to a later limitations starting date of June 20, 2007 under § 2244(d)(1)(D) because *Chao II* provides the "factual predicate" for his habeas claim by making the *Williams* holding retroactively applicable. This argument is unavailing. *Chao II* and *Williams* cannot establish a factual predicate for petitioner's sole claim, because they were not decisions rendered in his own litigation history and they did not directly eliminate his legal status as a convict. *See Johnson v. United States*, 544 U.S. 295 (2005)(holding that a notice of order vacating a federal prisoner's prior state conviction used to enhance federal sentence triggers AEDPA's one year limitations period, provided petitioner has shown due diligence in seeking the order); *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005)(explaining that a state court decision clarifying or re-defining state law does not trigger § 2244(d)(1)(D) unless the petitioner was party to that case.). To the extent petitioner also contends that the limitations period should start on the date *Owens* (July 16, 2010) or *Bridgers* (March 30, 2009) was decided, the court rejects the argument for the same reason. Thus, the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety

days after the state appellate court's decision. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed petitioner's convictions on February 5, 1990. Because petitioner's convictions became final prior to AEDPA's effective date of April 24, 1996, he benefits from a one-year grace period for timely filing habeas petitions, thereby extending the filing period through April 23, 1997.[2] *See McAleese v. Brennan*, 483 F.3d 206, 213 (3d Cir. 2007); *Douglas v. Horn*, 359 F.3d 257, 261 (3d Cir. 2004). Thus, petitioner had until April 23, 1997 to timely file his petition.

Petitioner did not file the instant application until March 15, 2012,[3] almost fifteen full years after the expiration of the limitations period. Therefore, his habeas application is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. The court will discuss each doctrine in turn.

---

[2] Many federal circuit courts have held that the one-year grace period for petitioners whose convictions became final prior to the enactment of AEDPA ends on April 24, 1997, not April 23, 1997. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (collecting cases). Although the Third Circuit has noted that "[a]rguably we should have used April 24, 1997, rather than April 23, 1997, as the cut-off date," *Douglas*, 359 F.3d at 261 n.5 (citing Fed. R. Civ. P. 6(d)), it appears that April 23, 1997 is still the relevant cut-off date in this circuit. In the present situation, however, petitioner filed his petition well-past either cut-off date, rendering the one-day difference immaterial.

[3] Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing and, thus, of filing). Applying this rule to the instant case, the court adopts March 15, 2012, as the date of filing because that is the date on petitioner's application.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

Petitioner filed his first Rule 61 motion in 2008 and his second Rule 61 motion in 2011, long after the expiration of AEDPA's limitations period in 1997. As a result, the two Rule 61motions do not have any statutory tolling effect. Therefore, the application is time-barred, unless equitable tolling is available.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 648-49 (emphasis added). With respect to the diligence requirement, the burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights;[4] equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's

---

[4]*See Urcinoli v. Cathel*, 546 F.3d 269, 277 (3d Cir. 2008).

obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). In turn, the Third Circuit has explained that extraordinary circumstances for equitable tolling purposes may be found where:

(1) the defendant actively misled the plaintiff;
(2) the plaintiff was in some extraordinary way prevented from asserting his rights; or
(3) the plaintiff timely asserted his rights mistakenly in the wrong forum.

See *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

In this case, petitioner appears to allege that the limitations period should be equitably tolled through June 20, 2007, the date on which the Delaware Supreme Court issued its decision in *Chao II*, or through July 16, 2010, the date *Owens* was decided. The court is not persuaded. To the extent these decisions rendered a change in Delaware substantive law, the federal courts addressing the issue have held that a change in state substantive law does not constitute an extraordinary circumstance warranting equitable tolling. See *United States v. Duval*, 957 F. Supp. 2d 100, 117 (D. Mass. 2013)(collecting cases); *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007). The court finds the reasoning in these cases to be persuasive. Therefore, although it would have been impossible for petitioner to cite *Chao II* and *Owens* prior to the issuance of those decisions, neither *Chao II* nor *Owens* warrant the application of the equitable tolling doctrine.

Moreover, the *Williams* and *Chao II* decisions do not constitute an extraordinary circumstance because *Williams* merely reaffirmed the existing requirement that the murder must have helped move the felony forward, demonstrating that petitioner could

8

have raised his instant argument regarding the meaning of the "in furtherance of" language in the felony murder statute before *Williams* and *Chao II* were decided. *See Blizzard v. Deloy*, 855 F. Supp. 2d 209, 213-14 (D. Del. 2012). The *Bridgers* and *Owens* decisions also do not amount to an extraordinary circumstance, because the court has found nothing to indicate that these decisions re-defined or re-interpreted the "theft" element of a first degree robbery offense such that petitioner's act of taking cash from the register in the store owned by the victims he beat and killed did not constitute theft.[5]

---

[5] A person commits first degree robbery by using or threatening force against another person, while committing theft, with the intent to prevent resistance to the taking of the property. *See* 11 Del. Code § 832. A person commits theft by taking, exercising control over, or obtaining the property of another person with the intent to deprive that person of it or appropriate it. *See* 11 Del. Code § 841. The issue in *Bridgers* was whether "any person threatened during a bank robbery is a robbery victim, even if he or she is merely a bystander." *Bridgers*, 988 A.2d at 940. Distinguishing between bystanders, bank customers present during an armed robbery, and the victim bank employees who were forced at gunpoint to relinquish the bank's money, the *Bridgers* Court clarified that "anyone from whom property is taken by threat or force and anyone actively involved during a theft-in-progress, such as an arresting officer or a pursuing homeowner, may be a robbery victim," but "someone who is merely a threatened bystander has not been robbed." *Bridgers*, 988 A.2d at 944.
In *Owens*, the Delaware Superior Court applied the reasoning from *Bridgers* and held that a customer service representative who had been confined to her office during a bank robbery was not a victim of the robbery, because no property had actually been taken from her. Notably, however, the Delaware Superior Court recently held that *Bridgers* and *Owens* are distinguishable from a situation where "the money in the cash register was taken from [the victim] with the use of force," because the cashier who was attacked by the defendant does not fit within *Bridgers'* definition of a bystander. *State v. Walker*, 2015 WL 3654806, at *3 (Del. Super. June 8, 2015).
Here, petitioner stole money from a store's cash register after beating the two store owners to death with a blunt object. (D.I. 12, App. to Appellant's Op. Br. in *Parson v. State*, No. 371,1987, at A-17; Appellant's Op. Br. in *Parson v. State*, No. 371,1987, at 3) By killing the two store owners, petitioner used force to eliminate the two people who were in a position to prevent the robbery, demonstrating that the two victims were not mere "bystanders" under *Owens* and *Bridgers*. Thus, petitioner's reliance on *Bridgers* and *Owens* is misplaced.

Finally, petitioner has not demonstrated that he exercised the level of diligence needed to trigger equitable tolling; despite the availability of his instant insufficient evidence arguments, petitioner waited twenty years to raise them to the Delaware state courts. To the extent petitioner's untimely filing was the result of a miscalculation regarding the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. See Taylor v. Carroll, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

For all of these reasons, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented. Accordingly, the court will dismiss the petition as time-barred.[3]

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would

---

[3]The court's conclusion that the instant application is time-barred obviates the need to discuss the State's alternative reason for denying the application.

find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

The court has concluded that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be dismissed as time-barred and, alternatively, as meritless. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.